IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

N.S., individually and on      )
behalf of her minor child,     )      CIV. NO. 09-00343 SOM/KSC
J.S.,                          )
                               )
          Plaintiffs,          )      ORDER AFFIRMING HEARING
                               )      OFFICER'S FINDINGS OF FACT
      vs.                      )      AND CONCLUSIONS OF LAW
                               )
STATE OF HAWAII, DEPARTMENT    )
OF EDUCATION and PAT           )
HAMAMOTO, in her official      )
capacity as the                )
Superintendent of the Hawaii   )
Public Schools,                )
                               )
          Defendants           )
_____)


ORDER AFFIRMING HEARING OFFICER'S
FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.        INTRODUCTION.

          At issue is whether an Individualized Educational Plan

("IEP"), created after six hours of discussion and review of

numerous reports and assessments, was an offer of a free

appropriate public education.  The court holds that it was.

          In 2008, the parents of J.S. ("Student"), at the time

a three-year-old autistic child, rejected an IEP.  Alleging that

the IEP failed to address Student's needs, they enrolled her in a

private school.  After a due process hearing, a hearing officer

concluded that the IEP had indeed offered a free appropriate

public education ("FAPE").  Plaintiffs (Student and her mother)

contest that decision before this court.  Plaintiffs ask this

court to find the IEP insufficient and to order reimbursement for
the cost of a private education.  While recognizing that
Student's mother, like her father, has labored and sacrificed on
Student's behalf, the court concludes that the law does not
support Plaintiffs' position.

II.      <u>BACKGROUND.</u>

         Born on July 23, 2005, Student was diagnosed with
pervasive developmental disorder, a type of autism.  Ex. 4 at 013
and Ex. 45 at 127, attached to Respondents' Record on Appeal
("ROA").  Before age three, Student received early intervention
services, including occupational and speech therapy, through the
State of Hawaii Department of Health's early intervention
program.  Ex. 6 and Ex. 45 at 128, attached to Respondents' ROA;
Transcript of Proceedings ("Transcript") at 28 (March 2, 2009).
On the eve of Student's third birthday, the State of Hawaii
determined that Student was eligible for special education
services.  Ex. 39, attached to Respondents' ROA.  This meant that
Student, who was attending Atherton Preschool via the Department
of Health's early intervention program at the time, had to
transition from being in a Department of Health program to
receiving the Department of Education's special education
services.  Transcript at 11, 35, 57.

         On July 22, 2008, less than a week after Student became
eligible for special education services, Student's special

education team met to create a tailored educational program for her.  This team consisted of Student's parents, her private advocate, a care coordinator, a counselor, a speech pathologist, the principal of Kaelepulu Elementary school (the public school in Student's geographic district), a general education teacher, and a district special education teacher.  Ex. 45 at 142, attached to Respondents' ROA; Transcript at 175, 215.  Student's mother consented to the absence of an occupational therapist from the meeting.  Ex. 44, attached to Respondents' ROA.

The meeting lasted six hours.  Transcript at 12. During the meeting, the team discussed whether, and to what extent, Student should receive occupational and speech therapy during the school year and extended school year.  While Student's parents wanted Student to receive occupational and speech services during school breaks, as she had received such services under the early intervention program, id. at 28, the Department of Education determined that Student did not qualify for such special education services at the time of the meeting. Additionally, the parents told the other team members that they wanted Student to attend Atherton Preschool, where the State of Hawaii operates a special education class.  Id. at 218, 227-229.

Student's IEP, intended to reflect the results of the meeting, provides for Student to receive 540 minutes per quarter of speech/language therapy, 135 minutes per quarter of

3

occupational therapy services, 1685 minutes per week of special

education, and extended school year services of special education

for breaks of five or more school days.  Ex. 45, attached to

Respondents' ROA.

A portion of the IEP designated as a clarification of

services and supports provides:

> OT and speech services will include but are
> not limited to any one or a combination of
> the following:
>
> -Individual and/or small group instructions
> to teach new skills
>
> -Observation in a variety of settings to
> gauge progress and generalization of skills
>
> -Collaboration with other individuals who
> will help to develop and implement strategies
> or activities that will help reinforce use of
> the new skill(s) in a variety of settings
>
> -Consultation with others to discuss
> student's progress and to adjust his/her
> program as needed.

Id. at 140.  The IEP further provides, "OT will collect data

between breaks and determine if there is a need for OT services.

Data will need to be collected between breaks as well to

determine if speech language services are needed during ESY."

Id.  The report also states that Student "will be in a full

preschool inclusion setting daily with 100 minutes per day spent

on 1:1 direct Discrete Trial Teaching."  Id. at 141.

Before the IEP issued, Student's parents received a

"prior written notice," dated July 23, 2005, from the principal

4

of Kaelepulu Elementary, the public school in Student's
geographic district.  Transcript at 31.  The notice stated that
Student's education would be delivered in a preschool inclusion
classroom, and that, although Student would receive extended
school year services, "OT will collect data over breaks to
determine the need for OT services during ESY."  Ex. 47 at 145,
attached to Respondents' ROA.

On July 27, 2008, Student's parents informed the
Kaelepulu principal that "we cannot accept the offer of FAPE
given in the Prior Written Notice sent to us without a final IEP
copy," as the notice did not "indicate where [Student] would be
receiving education and the services offered would not be
appropriate for our child."  Ex. 50, attached to Respondents'
ROA.  Student's parents then placed Student in a private school.
On July 30, 2008, they were informed that Student would have
received education at Atherton Preschool.  Ex. 51 at 152,
attached to Respondents' ROA.

On December 31, 2008, Student's mother requested an
administrative hearing, contending that the IEP had not offered
FAPE.  Ex. 1, attached to Petitioners' ROA.  Hearings were held
in March and April 2009.  Ex. 5, attached to Petitioners' ROA;
Exs. 7 & 8, attached to Petitioners' ROA.

At the administrative hearings and in briefs submitted
for these hearings, Plaintiffs argued that the Department of

Education had inappropriately denied Student occupational and speech therapy during the extended school year for the sole reason that the DOE wanted to develop and gather its own data to determine if Student was eligible for such services, rather than rely on submissions by Student and her parents.  Plaintiffs argued that, while the DOE had based its decision to provide extended school year instructional and therapeutic services based on the "nature and severity" of Student's condition, it decided to deny speech and occupational therapy services based on an alleged lack of data showing that the denial would cause Student to regress.  See Petitioners' Closing Brief at 2, attached as Ex. 11 to Respondents' ROA.  Additionally, Plaintiffs argued that the IEP's offer of occupational and speech therapy was illegitimate and illusory, because, as Plaintiffs read the IEP, it might allow therapy to be provided by, for example, record keeping only. Finally, Plaintiffs argued that the IEP insufficiently defined Student's placement.  Noting that the IEP provided for Student to be in an inclusion school, Plaintiffs noted that the DOE proposed to instruct Student at least part of the time in a "pull out" situation, where she was isolated from other students.  Id. at 6. Plaintiffs sought reimbursement for the private education they placed Student in upon rejecting the IEP.

        The DOE responded that occupational and speech services during the ESY periods were not required.  The State also

6

responded that the offer of occupational and speech therapy was
legitimate.  Ex. 12 at 14, attached to Respondents' ROA.  With
respect to placement, the State argued that Student's placement
was sufficient to satisfy the IDEA.

On June 22, 2009, the hearing officer issued her order,
concluding that the IEP had offered FAPE.

With respect to Plaintiffs' argument that Student
should receive occupational and speech therapy over the extended
school year, the hearing officer found that the DOE's decision
not to offer such services was based on a comprehensive
examination of Student's current and recent evaluations,
assessments, and information.  See Ex. 14 at 11, attached to
Respondents' ROA.

With regard to Student's argument that the IEP had not
legitimately offered speech and occupational therapy services,
the hearing officer deemed that argument to be "without merit."
Id. at 12.  The hearing officer explained the distinction between
the frequency of services and the type of service options.  Id.
While the "clarification section" addressed the service options,
the hearing officer explained, "The number of service minutes
that Student requires for a FAPE is vastly different from the
array of service options that the related service provider may
choose to utilize with Student."  Id. Noting the extensive
discussion of the service minutes and different service options

7

at the IEP meeting, the hearing officer rejected Student's characterization of the IEP language as "illusory." Id.

The hearing officer also concluded that the IEP sufficiently described Student's placement. Student's placement was decided by the IEP team, following discussion at the IEP meeting. By contrast, the hearing officer noted, the physical location of the placement was properly decided administratively by the DOE. Id. at 13.

Student received the decision on June 24, 2009. Compl. ¶ 8. On July 23, 2009, Plaintiffs filed the present action, challenging the administrative decision. Plaintiffs argue that Student is entitled to occupational and speech therapy over the extended school year, that the IEP is illusory, and that Student's placement is insufficiently defined.

III.     STANDARD OF REVIEW.

Any party aggrieved by a decision of a due process hearing officer under the IDEA may appeal the findings and decision to the state educational agency, 20 U.S.C. § 1415(g), or appeal the findings and decision to any state court or a United States district court. 20 U.S.C. § 1415(i)(2). The party challenging the administrative decision has the burden of proving deficiencies in the administrative decision. Seattle Sch. Dist. No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996).

When evaluating an appeal of an administrative

decision, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C). Unlike other cases in which a court reviews administrative action, a court reviewing an IDEA administrative decision does not employ a highly deferential standard of review.  JG v. Douglas County Sch. Dist., 552 F.3d 786, 793 (9th Cir. 2008). Instead, the amount of deference given to an administrative hearing officer's findings is a matter of discretion for the court.  Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  Although de novo review is usually inappropriate, a court must consider the findings carefully and respond to the hearing officer's resolution of each material issue.  Id.  However, the court is free to accept or reject the findings in part or in whole.  Id.  When exercising its discretion to determine what weight to give a hearing officer's findings, a court may examine the thoroughness of those findings and accord greater deference when the findings are "thorough and careful."  Douglas County, 552 F.3d at 793.  A district court should review for procedural and substantive compliance with the IDEA.  Wartenberg, 59 F.3d at 891.

    As a part of FAPE, the IDEA guarantees certain

procedural safeguards for children and parents, including the process of developing an IEP for each child.  L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009)(citations and brackets omitted); see also Bd. of Educ. v. Rowley, 458 U.S. 176, 181 (1982) (noting that a court must first determine whether "the State complied with the procedures set forth in the Act"). Procedural flaws in the IEP process only deny a child FAPE when the flaws affect the "substantive rights" of the parent or child. Id.  Such substantive rights include the loss of a child's educational opportunity or an infringement on the parents' opportunity to participate in the IEP process.  Id.

     With respect to substantive compliance, a court reviewing the merits of an IEP must determine whether the IEP is "reasonably calculated to enable the child to receive educational benefits."  Rowley, 458 U.S. at 207; accord W.G. v. Bd. of Trustees, 960 F.2d 1479, 1483 (9th Cir. 1992).  The "free appropriate public education" to which a child is entitled under the IDEA "does not mean the absolutely best or potential-maximizing education."  Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir. 1987) (internal quotations omitted).  Instead, "states are obliged to provide 'a basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.'"  Id. (quoting Rowley, 458 U.S. at 201).  "A school district fulfills

its substantive obligations under the IDEA if it provides an IEP
that is likely to produce progress, not regression, and if the
IEP affords the student with an opportunity greater than mere
trivial advancement."  <u>T.P. v. Mamaroneck Union Free Sch. Dist.</u>,
554 F.3d 247, 254 (2d Cir. 2009) (internal quotations and
citations omitted).

IV.      <u>ANALYSIS.</u>

         As an initial matter, the court notes that the hearing
officer's findings and conclusions are "thorough and careful" and
therefore entitled to increased deference.  <u>See</u> <u>Douglas County</u>,
552 F.3d at 793 (giving particular deference to "thorough and
careful" administrative findings).  The hearing officer
summarized the testimony of the teachers, administrators, and
therapists involved in the process, and created a detailed order
explaining her factual findings and legal reasoning.

         Plaintiffs offer three arguments (the same arguments
presented to the officer) as to why Student's IEP was faulty and
why the hearing officer's decision was erroneous.  None of the
arguments persuades this court that Student was denied FAPE.

         A.      Plaintiffs Have Not Proven That Occupational
                 Therapy and Speech Services During The
                 <u>Extended School Year Were Necessary for FAPE.</u>

         Plaintiffs first argue that Student is entitled to
occupational and speech therapy during extended school year
periods, and that failure to provide such services rendered the

IEP faulty.  Plaintiffs argue that the DOE should have based any decision on available information, which Plaintiffs argue showed that Student needed such services.  This court is not persuaded.

"Extended school year services must be provided only if a child's IEP Team determines, on an individual basis, in accordance with §§ 300.320 through 300.324 [describing the requirements and development of an IEP], that the services are necessary for the provision of FAPE to the child."  34 C.F.R. § 300.106.

The decision to exclude speech and occupational therapy during any extended school year period was made after the IEP team reviewed reports, assessments, summary statements, resource books, the "nature and severity" of Student's condition, and information from Student's early intervention program. Transcript at 138, 193-95.  At the time of the IEP meeting, there was no evidence establishing that occupational or speech services were necessary during the extended school year.  The autism consulting teacher, stating that any decision concerning the need for occupational and speech therapy services during the extended school year should be based on available data, found no data indicating that such services were necessary.  Transcript at 138-39.  The speech language pathologist indicated that "without evidence or without data to indicate that she needed ESY in order to make progress on her Goals and Objectives[,] there[ ] was no

reason to include [such services in her IEP]." Id. at 188. She stated, "There was no data to indicate that [Student] would have a problem." Id. at 192. The data, according to the occupational therapist and speech therapist who reviewed the information in light of the goals and objectives of the IEP, supported the conclusion that the services were not necessary. Id. at 139.

Plaintiffs respond by pointing to the mother's testimony that she understood that the DOE needed additional data to determine whether, in the future, Student might be eligible for services. Plaintiffs argue that the mother's understanding suggests that the DOE made its determination without any data. Id. at 26. But the mother's acknowledgment that the DOE would reassess its decision after gathering more data is not evidence that the DOE's initial decision was based on inadequate information.

Plaintiffs present no evidence that the extended school year occupational therapy and speech services were necessary for FAPE.[1] At most, the mother testified that Student required services because "her needs are such that she needs to have continuous services given to her speech therapy, OT, so that her

---

[1]The parties dispute whether the parents were asked for additional evidence at the IEP meeting. The autism consulting teacher stated that the parents and the educators who had worked with Student during early intervention were asked for data. Transcript at 138. The mother states, however, that no such request was made. Transcript at 26.

skills don't regress." Id. at 27.  The mother's conclusion, without more, does not counter the testimony of the experts who reviewed the reports and determined that services were not necessary.

        B.          Plaintiffs Have Not Proven That Student's IEP Lacked Specificity.

The court turns now to Plaintiffs' second argument as to why the IEP is faulty.  Plaintiffs argue that Student's IEP is illusory because, although it requires 540 minutes of speech therapy per quarter, it allegedly could be read as permitting satisfaction of this requirement by "record keeping" alone, or by some other unidentified activity.  Plaintiffs point to the following language in the IEP:

> OT and speech services **will include but are not limited to any one or a combination** of the following:
>
> -Individual and/or small group instructions to teach new skills
>
> -Observation in a variety of settings to gauge progress and generalization of skills
>
> -Collaboration with other individuals who will help to develop and implement strategies or activities that will help reinforce use of the new skill(s) in a variety of settings
>
> -Consultation with others to discuss student's progress and to adjust his/her program as needed.

Ex. 45 at 140, attached to Respondents' ROA (boldface added).

Plaintiffs appear to be arguing that the IEP lacks the

14

specificity required by law.  This court is unpersuaded.

First, Plaintiffs' construction of the IEP is
unreasonable.  Plaintiffs read the IEP as permitting the DOE to
provide occupational therapy and speech services only by, for
example, observing Student.  In essence, Plaintiffs equate the
language that OT and speech services will "include" "any one"
service or a combination of services with language stating that
OT and speech services may be provided exclusively through a
single service. However, "include" is defined as, and generally
construed as, "[t]o contain as a part of something."  <u>Black's Law</u>
<u>Dictionary</u> (8th ed. 2004).  The court reads the IEP to mean that
OT and speech services may include observation, but may not
consist entirely of observation.  Thus, Student's speech therapy
*could not be limited to* the single service of observation.
Plaintiffs' reading makes a nullity of the word "include."

The DOE states that, as a factual matter, therapy could
not be provided by observation alone.  The speech pathologist
testified that it is "not possible" to provide speech therapy by
observation alone.  <u>Id.</u> at 183, 201.  At the IEP meeting, she did
not tell the parents that Student would receive only observation
because "it is not true" that Student would receive only
observation.  <u>Id.</u> at 203.  The autism consultant teacher
testified that the purpose of the listing possible services was
"to reiterate what's been discussed in the meeting and to just

clarify that the services would and could include direct therapy as well as consultation and these other listed items with the team." Id. at 141.

This court's task is to determine whether the IEP satisfies the IDEA. That is, the court must decide whether the IEP is reasonably calculated to provide educational benefits. Rowley, 458 U.S. at 207. The IEP must include a statement of the special education and related services to be provided that will enable the child to advance toward her goals. 20 U.S.C. § 1414(d)(1)(A)(i)(IV). Student's IEP identifies the special education services, the frequency and duration of such services, and a clarification section on how occupational and speech therapy may be provided. Plaintiffs' argument is nothing more than mere speculation that the DOE will offer Student only record keeping or observation to fulfill the therapy requirement. The IEP was reasonably calculated to provide educational benefits to Student.

Plaintiffs offer no law, and this court is aware of none, stating that the IDEA requires more specificity in defining occupational therapy and speech services. If Plaintiffs are seeking an IEP stating a minimum amount of time for each method of service, that argument is not supported by law. See C.P. v. State of Hawaii, 2010 WL 1962944, *5 (D. Haw. May 17, 2010) (holding that the IDEA does not require a percentage of time to

16

be dedicated to specific types of services).

At the hearing on this motion, Plaintiffs passionately argued that the IDEA must include a definite statement of services.  Plaintiffs explained that if the IEP defined speech therapy as "direct instruction in an individual or group basis" and services facilitating direct instruction, that language would suffice.  However, that language would invite the very argument Plaintiffs make here: what exactly is "direct" instruction or a service facilitating direct instruction?  Theoretically, observation could qualify.

Plaintiffs also cite Hall v. Vance County Board of Education, 774 F.2d 629, 630 (4th Cir. 1985), in support of their argument that FAPE is denied absent their proposed definition of OT and speech services.  In Hall, a dyslexic fifth grader, despite the implementation of many IEPs over a two-year period, remained functionally illiterate.  The IEPs provided that the student was to spend ninety-five percent of his time in a regular classroom, with, at most, two hours a week spent in a "resource room."  Id. at 631.  The student continued to perform poorly in the third and fourth grades.  The Fourth Circuit held that Vance County had failed to provide FAPE because it had violated the IDEA's procedural requirements.  Id. at 635.  The court additionally determined that Vance County had violated the substantive provisions of the IDEA by failing to provide the

student with an education reasonably calculated to enable him to receive educational benefits.  The student was "functionally illiterate" and "untestable."  Id. at 636.

That case is not at all apposite here.  Plaintiffs do not argue that Student's procedural rights were violated. Plaintiffs rejected an IEP even before they received the final IEP because it purportedly did not define Student's placement. The Fourth Circuit's conclusions have no bearing on Student's arguments.  At most, in a footnote the Fourth Circuit noted that the district court had rejected the IEP as lacking the requisite specificity, but it is not at all clear that the specificity in issue was analogous to the language challenged here.  Id. at 635 n.6.  Nothing in the Fourth Circuit's decision addresses occupational therapy or speech services.  Additionally, the IEP in Hall purported to provide educational services by having the student spend two hours of learning in a resource room with other disabled children.  That IEP's description of those services is far less detailed than the specific language in Student's IEP defining occupational therapy and speech services.  In short, Hall does not support Plaintiffs' argument that occupational therapy and speech services were insufficiently defined in Student's IEP.

      C.          Plaintiffs Have Not Proven That the IEP Insufficiently Defined Student's Placement.

This court turns now to Plaintiffs' third argument.

Plaintiffs argue that the IEP insufficiently defines Student's placement.  Plaintiffs rejected the IEP because it failed to name the school at which Student would receive education.  However, as the physical location where a placement will be implemented is an administrative decision made by the DOE, it is not necessarily included in the IEP.  The IEP instead sets forth the IEP team's decisions.

Plaintiffs argue now that the IEP fails to define the term "inclusion preschool."  Plaintiffs argue that Student, being assigned to an "inclusion preschool," should be learning at all times with her general education peers.  This argument fails.

First, Student's mother testified that she initially thought that speech therapy services would be provided at school, on a one-to-one "pull out" basis.  Transcript at 30.  If the mother intended Student to receive "pull out" education, at least for speech therapy, the mother knew that Student would not be with the general education students at all times.

Second, an IEP must only include an explanation of the extent, if any, to which the child will not participate with non-disabled children in the regular class and in extra-curricular and nonacademic activities.  20 U.S.C. § 1414(d)(1)(A)(I)-(VIII).  The IEP provides that Students "will be in a full preschool inclusion setting daily with 100 minutes per day spent on 1:1 direct Discrete Trial Teaching."  Ex. 45 at 141, attached to

Respondents' ROA.  Student's IEP specifically explains how much time Student will not participate in regular class, making it clear that Student would not be with other students at all times.

D.      Plaintiffs Have Not Shown That They Are Entitled to Reimbursement for Student's Private School Education.

Finally, Plaintiffs say that they are entitled to reimbursement for the substitute services provided at a private school.  Under 34 C.F.R. § 300.148(c), reimbursement for a private school placement is sometimes available:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.

Parents who unilaterally remove a child from a public education to a private school usually do so "at their own financial risk." Burlington Sch. Comm. v. Dep't of Educ. of Mass., 471 U.S. 359, 373-74 (1985).  Because Plaintiffs do not show that Student was denied FAPE, plaintiffs are not entitled to any reimbursement.

V.      CONCLUSION.

The court affirms the hearing officer's ruling.  The Clerk of Court is ordered to enter judgment for Defendants and to

close the case.

                    IT IS SO ORDERED.

                    DATED: Honolulu, Hawaii June 9, 2010.



                              /s/ Susan Oki Mollway

                              Susan Oki Mollway
                              Chief United States District Judge


N.S. v. State of Hawaii, Department of Education, 09-00343 SOM/KSC; ORDER
AFFIRMING HEARING OFFICER'S FINDINGS OF FACT AND CONCLUSIONS OF LAW.